## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CULTURAL ASSETS II, LLC,

       Plaintiff,

     vs.                          No. CIV 98-1426 LH/LCS-ACE

SOTHEBY'S, INC.,

       Defendant.


## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### FINDINGS OF FACT

1.      On July 24, 1997, Plaintiff Cultural Assets II, Defendant Sotheby's and non-party Sotheby's Financial Services ("SFS") entered into a Loan and Consignment Agreement ("Consignment Agreement").   Under the Consignment Agreement, SFS agreed to make a loan to Plaintiff in connection with Plaintiff's consignment of southwestern antique furniture and decorations ("the Collection" or "the Property") to Defendant for auction.

2.      The Consignment Agreement contains a choice of law provision stating "This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York."

3.      The Consignment Agreement states that "Estimates included in receipts, this Agreement, catalogues or elsewhere are preliminary only and subject to revision by Sotheby's from time to time in its sole discretion."

4.      In the amendment to the Consignment Agreement, Plaintiff and Defendant agree that "Each of lots 1 through 16 and lots 133 through 154 of the Property (as identified in the catalogue for the sale) will be offered subject to a reserve equal to 30% of such lot's low pre-sale estimate.  All remaining lots of the Property will be offered subject to a reserve equal to 90% of its low pre-sale estimate."

5.       Plaintiff agreed in the Consignment Agreement that "the Property will be held and offered by Sotheby's as SFS' pledge agent at public auction."

6.      The Consignment Agreement also states that "Neither Sotheby's nor SFS makes any representation or warranty of the anticipated selling price of any Property, and no estimate anywhere by Sotheby's or SFS of the selling price of any Property may be relied upon as a prediction or guarantee of the actual selling price."

7.      The Consignment Agreement contains a merger clause stating "This Agreement, including the Schedule hereto, the Terms of Guarantee and Conditions of Sale, contains all of the terms and provisions and constitutes the entire agreement between the parties with respect to the subject matter hereof.  This Agreement supersedes all prior or contemporaneous written, oral or implied understandings, representations and agreements of the parties relating to the subject matter of this Agreement."

8.      In the Consignment Agreement, Plaintiff and Defendant each agreed "to bear the expenses of . . . one-half of the cost of production of the catalog . . . ."  The Consignment Agreement also states that "There will be a 20% service charge on the cost of any services performed by others and paid by Sotheby's or SFS, as the case may be, for [Plaintiff's] account."

9.      Defendant advised Plaintiff prior to execution of and contemporaneously with performance of the Consignment Agreement that Defendant had no experience with the types of objects in Plaintiff's Collection and had never before conducted an auction of such material.  Defendant also advised Plaintiff that it was relying on Plaintiff to create bidding estimates for Plaintiff's Collection.

10.     Mr. Luckett, Plaintiff's principal shareholder and manager, was an expert in the value of the items in its Collection and set the initial bidding estimates for the items in the Collection.

11.     Subsequent revisions in the bidding estimates were made by agreement between Plaintiff and Defendant.

12.     Defendant sent a proposal ("the Proposal") to Plaintiff outlining suggestions for promotional purposes.

13.     Defendant performed substantially all of the suggestions in the Proposal.

14.     Defendant's performance of its promotional responsibilities, if any, were extraordinary and unprecedented in its course of business during the last 20 years.

15.     Plaintiff presented no evidence that Defendant's performance of its promotional responsibilities, if any, was below the standard of performance for that type of business in the local community.

16.     Defendant presented the only evidence about the standard of performance.  It showed that the timing of the mailing of the catalog was consistent with its business practice over the last 12 to 20 years.  No contradictory evidence was presented.

17.     Plaintiff presented no evidence that any of the claimed actions or claimed failures to act properly by Defendant were the proximate cause of any particular damages.  Plaintiff's expert, Dr. Parkman, denied having any opinion on causation.  Another of Plaintiff's experts, Dr. Smith, opined

-3-

that something must have been wrong because the sales did not exceed the high estimates but did not

establish that the results of the auction would have been different had the catalog been mailed earlier.

18.     Plaintiff presented no evidence that he reasonably expected the catalog would be mailed more

than two to three weeks before the auction when he entered into the Consignment Agreement.

19.     Defendant charged Plaintiff a 20% surcharge on the costs of producing the catalog.

20.     The 20% surcharge amounted to $7,922.00.  The earliest ascertainable date Plaintiff incurred

the surcharge is February 24, 1998.  *See* Pl.'s Ex. 52.

## CONCLUSIONS OF LAW

1.     This Court has jurisdiction over the parties to, and the subject matter of, this action pursuant

to 28 U.S.C. § 1332 (Diversity).

2.     Venue is proper in this court.  *See* Order Denying Motion for Transfer of Venue (Doc. No.

28), filed April 8, 1999.

3.     The Court is bound by New York law.  *See Id.*

4.     A fiduciary duty arises from the relation between a fiduciary and benefactor.  *Northeast

General Corp. v. Wellington Advertising, Inc.*, 82 N.Y.2d 158,172 (N.Y. 1993).  A fiduciary relation

exists between two persons when one of them is under a duty to act for, or to give advice for, the

benefit of another upon matters within the scope of the relation.  *Id.*

5.     Where a contract permits one of the parties to perform activities such as revising bidding

estimates and offering property as a pledge agent for another party, performance of such an activity

cannot be the basis for a breach of fiduciary duty claim.  *See Greenwood v. Koven*, 880 F.Supp. 186,

194-195 (S.D.N.Y. 1995)(under New York  law, auctioneer did not breach duty of loyalty[1] as agent

---

[1]Among the fiduciary duties owed a principal by its agent is the duty of undivided loyalty.  *Id.* at 194.

of seller of painting when it investigated buyer's claims of lack of authenticity, where consignment agreement allowed investigation by auctioneer, even if the investigation is contrary to the principal's interests).

6.     Defendant had the right to revise the bidding estimates in its sole discretion.

7.     Defendant had the right to offer the lots of the Collection at the auction subject to a reserve equal to 30% or 90%, of the low pre-sale estimates.

8.     Defendant had the right to hold and offer the Property as SFS' pledge agent at public auction.

9.     Defendant met its obligation to render opinions of bidding estimates and to set reserves truthfully.

10.    Defendant did not breach its fiduciary duty to Plaintiff.

11.    "[A]n auctioneer . . . is held to a standard of care commensurate with the special skill which is the norm in the locality for that kind of work." *Cristallina S.A. v. Christie, Manson & Woods Int'l, Inc.*, 502 N.Y.S.2d 165, 172 (N.Y. App. Div. 1986).

12.    Plaintiff has the burden of proving the standard of care via expert testimony. *See Fidler v. Sullivan*, 463 N.Y.S.2d 279, 280 (N.Y. App. Div. 1983)(plaintiff failed to establish prima facie case of legal malpractice and "[m]oreover, there was no expert opinion evidence offered to establish the standard of professional care and skill that defendants were alleged to have failed to meet"); *Selkowitz v. County of Nassau*, 45 N.Y.2d 97, 102 (N.Y. 1978)(expert opinion is appropriate to clarify a wide range of issues calling for the application of accepted professional standards, including the standard of care for contractors, fire fighters, window washers and mariners); *Dougherty v. Milliken*, 163 N.Y. 527, 533 (N.Y. 1900)(expert opinion appropriate where conclusions to be drawn

from facts stated depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence).

13.     Plaintiff also has the burden of proving Defendant's conduct constituted a deviation from the requisite standard of care via expert opinion testimony.  *See Perrone v. Grover*, 707 N.Y.S.2d 196, 197 (N.Y. App. Div. 2000)(medical malpractice); *Berger v. Becker*, 709 N.Y.S.2d 418 (N.Y. App. Div. 2000)(medical malpractice).

14.     Plaintiff has the burden of proving proximate cause.  *See Perrone v. Grover*, 707 N.Y.S.2d 196, 197 (N.Y. App. Div. 2000)(medical malpractice); *Fidler v. Sullivan*, 463 N.Y.S.2d 279, 280 (N.Y. App. Div. 1983)(legal malpractice).

15.     Plaintiff did not meet its burden of establishing the standard of care by expert opinion testimony.

16.     Plaintiff did not meet its burden of proving Defendant's conduct constituted a deviation from the requisite standard of care via expert opinion testimony.

17.     Plaintiff did not meet its burden of proving that any of Defendant's alleged actions were the proximate cause of any particular damages.

18.     Defendant was not negligent in its performance of the auction and related services.

19.     The parol evidence rule prohibits the introduction of extrinsic evidence to vary or add to the terms of a contract, especially where such contract contains a merger clause.  *NAB Construction Corp. v. Consolidated Edison Co. of New York, Inc.*, 636 N.Y.S.2d 37, 38 (N.Y. App. Div. 1995).

20.     A breach of the implied covenant of good faith and fair dealing may be found where a party's action directly violates an obligation that may be presumed to have been intended by the parties. *See M/A-Com Security Corp. v. Galesi,* 904 F.2d134, 136 (2d Cir. 1990)(courts employ the good faith

performance doctrine to effectuate the intentions of the parties, or to protect their reasonable expectations);  *BGW Development Corp. v. Mount Kisco Lodge No. 1552*, 669 N.Y.S.2d 56, 58 (N.Y. App. Div. 1998)(under New York law, every contract contains an implicit obligation and covenant of good faith and fair dealing).

21.    Oral and written representations regarding how Defendant would perform the auction and related services, including the Proposal, are not merged into the Consignment Agreement and are precluded by the parol evidence rule.  The Proposal is not a contract and is not binding on the Defendant.

22.    There was no obligation, implied or intended, on Defendant to mail the catalogs more than two to three weeks before the auction.

23.    Defendant did not breach the implied covenant of good faith and fair dealing.

24.    Defendant did not breach the consignment agreement except for one limited matter, the 20% surcharge clause which is addressed by the following conclusions.

25.    Ambiguous contract language must be construed against the drafter.  *Lucente v. Int'l Business Machines Corp.*, 117 F.Supp.2d 336, 342 (S.D.N.Y. 2000).

26.    The Consignment Agreement is ambiguous with respect to the application of the 20 percent service charge to the catalog production and shall be construed against Defendant such that the 20 percent service charge is not applicable to production of the catalog.

27.    Defendant improperly charged Plaintiff a 20% surcharge on the costs of producing the catalog.

28.    Under New York law, prejudgment interest is normally recoverable as a matter of right in an action at law for breach of contract. *Donovan v. Dairy Farmers of America, Inc.*, 53 F.Supp.2d 194,

197 (N.D.N.Y. 1999); N.Y.C.P.L.R. § 5001 (McKinney 1992).  The statutory rate for an award of prejudgment interest in breach of contract cases is nine percent.  *Id.;*  N.Y.C.P.L.R. § 5004 (McKinney 1992).  Prejudgment interest is calculated on a simple interest basis from the earliest ascertainable date on which its cause of action existed.  *Donovan*, 53 F.Supp.2d at 197; N.Y.C.P.L.R. § 5001 (McKinney 1992).

29.     Plaintiff is entitled to prejudgment interest on the amount of $7,922.00 at the rate of nine percent (9%) from February 24, 1998 until date of judgment, in the sum of $2,127.25.

30.     Plaintiff shall recover from Defendant the 20% surcharge on the cost of catalog production, in the amount of $7,922.00, and prejudgment interest in the amount of $2,127.25, for a total of $10,049.25.

        **WHEREFORE,** a judgment shall be entered in accordance with these Findings of Facts and Conclusions of Law.

_____
**UNITED STATES DISTRICT JUDGE**